UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TECHNOMEDIA INTERNATIONAL, INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-09-3013 |
| § | |
| INTERNATIONAL TRAINING SERVICES § | |
| INC; dba WELL CONTROL SCHOOL, *et al*, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

Pending before the Court is Defendants' International Training Services, Inc., d/b/a Well Control Schools ("WCS"), and its parent company RPC, Inc.'s motion to dismiss for failure to state a claim and for a more definite statement (Docs. 26–27), as well as Plaintiff Technomedia International, Inc.'s ("Technomedia") response (Doc. 36) and Defendants' reply (Doc. 37). Upon review and consideration of this motion, the response and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendants' motion should be granted in part and denied in part.

I. Background and Relevant Facts

This is a breach of contract case relating to computer-based training products ("CBTs" or "e-learning courses") for the oil and gas industry. (Doc. 22 at ¶ 6.) On February 7, 2007, the parties entered into a confidentiality agreement. (Doc. 22 at ¶ 7.) Technomedia contends that by entering into the confidentiality agreement, Defendants acknowledged that the information they would obtain from Technomedia was "confidential and proprietary and considered to be trade secrets by [Technomedia]." (*Id.*) In July 2007, the parties met to discuss converting WCS's

"System 21" CD-ROM courses into "web enabled" classes. (*Id.* at ¶ 8.) Technomedia contends it began work on the project without a signed agreement based on Defendants' verbal assurances. (Doc. 22 at ¶ 8.) The project was later memorialized in documents titled Statement of Work #1 ("SOW#1") and Statement of Work #2 ("SOW#2"). (Doc. 27 at ¶ 8.) In August 2007, Technomedia completed the work of SOW#1, but that agreement had not yet been finalized. (Doc. 22 at ¶ 8.)

During this time the parties were negotiating a master agreement called the Master E-Learning Products and Services Agreement ("MEPSA"). (Doc. 27 at ¶ 8.) While negotiating the MEPSA, WCS's president, Edwin Geissler ("Geissler"), asked that Technomedia's invoices for work under SOW#1 and SOW#2 be less than $25,000 per month "so that the projects could move forward more quickly without detailed scrutiny by his corporate parent." (Doc. 22 at ¶ 11.) Technomedia states that as an "inducement" to finance Defendants' project by invoicing less than $25,000 per month, Defendants promised to share future revenue with Technomedia, to enter into an extended maintenance agreement with Technomedia to "host and deploy WCS's courses," and to "award four major development projects to [Technomedia] as a part of an aggregate development commitment as reflected in the MEPSA." (*Id.*)

On November 28, 2007, WCS and Technomedia executed a memorandum of intent anticipating the MEPSA that was still being negotiated. (Doc. 27 at ¶ 9.) The memorandum included SOW#1 and SOW#2 as attachments and anticipated "integrating the terms and conditions of [Statements of Work #2, #3, and #4] in accordance with the Master Services Agreement." (*Id.*) Defendants state that because they anticipated finalizing the master agreement, the memorandum of intent was brief and did not address several terms essential and material to a final agreement. (*Id.* at ¶ 10.)

In December 2007, the parties executed SOW#1, SOW#2, and SOW#3. (Doc. 22 at ¶¶ 8–10.) On December 19, 2007, the parties executed the MEPSA. (Doc. 27-1.) According to the Defendants, the MEPSA "provided for the development of certain 'original work created specifically for' WCS (the 'Original Works')." (Doc. 27 at ¶ 3.) The MEPSA further required that services to be performed by Technomedia would be set forth in a Statement of Work. (*Id.* at ¶ 4.) In the MEPSA, Technomedia warranted that it would not begin work on new projects before receiving an applicable Statement of Work executed by WCS. (*Id.*) The MEPSA was intended to memorialize all representations and promises made between the parties for the prior SOWs. (Doc. 22 at ¶ 11.) It states that the "AGREEMENT, inclusive of all STATEMENTS OF WORK attached or amended hereto and made a part of hereof, constitutes the entire AGREEMENT between the parties with respect to the subject matter hereof, and supersedes all prior understandings, communications, and agreements whether verbal or written." (Doc. 27-1 at ¶ XII(I).) However, according to Technomedia, "[t]he MEPSA required the negotiation and execution of the promised additional contracts (maintenance and revenue sharing agreements)." (Doc. 22 at ¶ 12.) Technomedia further claims that it frequently requested and provided multiple drafts of proposed revenue sharing and maintenance agreements to Defendants, but that Defendants refused to execute the proposed agreements in violation of the MEPSA and contrary to Defendants' earlier promises and representations. (*Id.*)

Around March 2008, Technomedia completed its work under SOW#2. (Doc. 22 at 3 n.2; Doc. 27 at ¶ 12.) In or about July 2008, Technomedia completed the work described by SOW#3. (Doc. 27 at ¶ 12.) Defendants claim, however, that Technomedia "failed to deliver to WCS custody and control" of deliverables under SOW#2 and SOW#3. (*Id.*) Further, Defendants argue that the parties established a pattern regarding payment for Technomedia's performance

under each SOW, which included a minimum monthly payment by WCS to Technomedia, and that the parties followed this pattern under SOW#2 and SOW#3. (*Id.* at ¶ 13.)

In July 2008, WCS asked Technomedia to begin work on a fourth project, planned as Statement of Work #4 ("SOW#4"). (Doc. 22 at ¶ 13.) Technomedia began work on SOW#4 before the parties could memorialize the terms and execute a final contract. (*Id.*) Along the lines of the pattern of monthly payments under the prior SOWs, the parties agreed to a payment schedule for SOW#4. (Doc. 27 at ¶ 14.) In August 2008, WCS began "good faith" payments for SOW#4 before it could be completely negotiated. (*Id.*) However, before the parties were able to "complete preliminary work necessary for the project to proceed" the target market for the project suffered a "significant decline." (*Id.* at ¶ 15.) SOW#4 was never executed. (*Id.*) In April 2009, WCS notified Technomedia that the project would not proceed and stopped making monthly payments. (*Id.*)

As of April 2009, WCS had paid Technomedia a total of $244,984.90. (*Id.*) Technomedia claims that Defendants' termination of SOW#4 caused it "significant damage and materially breached the MEPSA and the verbal representations and commitments Defendants made with regard to the MEPSA and SOW#4." (Doc. 22 at ¶ 13.) WCS claims that it advised Technomedia prior to executing the MEPSA that "there were a number of issues it had to resolve before committing to the project contemplated in Statement of Work #4." (Doc. 27 at ¶ 16.) "As WCS could not resolve the issues, it could not commit to the project." (*Id.*)

Technomedia developed the "proprietary multi-language graphical user interface called the XMp that 'wraps around' the CBTs and a proprietary integrated learning solution ("ILS") that deploys the CBTs and the XMp into an on-line training application for the training and management of oil and gas industry employees." (Doc. 22 at ¶ 6.) Both Technomedia and WCS

now contend they own the ILS, the XMp, and most of the proprietary media components exchanged under the SOWs. (*Id.* at ¶ 14.) Technomedia alleges that Defendants "unilaterally terminated SOW#4 and breached the MEPSA and SOW#4 to provide Halliburton, Schlumberger and Saudi Aramco, and other oil and gas companies, with e-learning courses, including but not limited to SOW#2 and SOW#3, on their own without having to share revenue with [Technomedia] as promised, agreed to, and required under the MEPSA." (*Id.* at ¶ 15.)

On June 9, 2009, Technomedia filed its original petition in Harris County, Texas state court. (Doc. 1-1 at 10.) On September 15, 2009, Defendants removed the case to this Court pursuant to 29 U.S.C. § 1331 because a federal questions exists under 17 U.S.C. § 101 *et. seq*. (Doc. 1.) In its third amended complaint, Technomedia requests a declaratory judgment, under 28 U.S.C. § 2201, declaring Technomedia "the owner of the copyrights to the technology used in performing the SOWs under 17 U.S.C. § 201(a) and (b)." (Doc. 22 at ¶ 17.) Technomedia also sues for breach of contract, fraud, negligent misrepresentation, misappropriation of trade secrets, and unjust enrichment. (*Id.* at ¶¶ 19–31.) Defendants move to dismiss the negligent misrepresentation and unjust enrichment claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim; or, in the alternative, for Technomedia to replead the negligent misrepresentation claim with particularity. (Doc. 26.) Defendants further contend that Technomedia failed to state its fraud claim with particularity as required by Rule 9(b) and to provide fair notice of its misappropriation of trade secrets claim as required by Rule 8(a)(2). (*Id.* at ¶ 2.)

II. Standards of Review

Rule 8(a)(2) requires the plaintiff to make a "short and plain statement of a claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The function of a

complaint is to give the defendant fair notice of plaintiff's claim and the grounds upon which plaintiff relies. *Doss v. S. Cent. Bell Tel. Co.*, 834 F.2d 421, 424 (5th Cir. 1987) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544. 555 (2007)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). A plaintiff must allege sufficient facts to state a claim to relief that is "plausible" on its face. *Id.* at 569. A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcraft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). But, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). Nevertheless, it is the court's responsibility to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success. *Id.* However, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir.

2003). In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Nevertheless, Rule 9(b) requires "more than a simple allegation that a defendant had fraudulent intent." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Adequate scienter requires a plaintiff to "set forth specific facts that support an inference of fraud." *Id.*; *see Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) ("The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that makes it reasonable to believe that defendant knew that a statement was materially false or misleading.") (emphasis in original); *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) ("Although Rule 9(b) does not require 'particularity' with respect to the defendants' mental state, the complaint must still afford a basis for believing that plaintiffs could prove scienter"), *cert. denied*, 498 U.S. 941 (1990); *cf. Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (requiring plaintiffs who allege fraud "to plead the factual basis which gives rise to a strong inference of fraudulent intent." (internal quotation omitted)).

The Fifth Circuit strictly interprets Rule 9(b) as requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009) (quoting *Williams v. WMX*

*Techs, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)). "Put simply, Rule 9(b) requires the complaint to set forth 'the who, what, when, where, and how' of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

III. Discussion

    A. Negligent Misrepresentation

A claim for negligent misrepresentation requires that "(1) the representation is made by a defendant in the course of business or in a transaction in which he has a pecuniary interest; (2) the defendant supplied 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation." *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)); *see also* Restatement (Second) of Torts § 552 (1977).

Negligent misrepresentation requires an injury independent and apart from breach of contract. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998). The independent injury doctrine blocks parties in some circumstances from simultaneously maintaining a breach of contract and a tort claim. *Eastman Chem. Co. v. Niro, Inc.*, 80 F. Supp. 2d 712, 716 (S.D. Tex. 2000); *see also D.S.A.*, 973 S.W.2d at 664 ("[W]e conclude that [plaintiff's] negligent misrepresentation claim must fail for lack of any independent injury."); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991) ("If the defendant's conduct

. . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort.  Conversely, if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.").  Texas courts have relaxed the independent injury requirement for fraud allegations, but not for negligent misrepresentation claims.  *D.S.A.*, 973 S.W.2d at 664.  "Negligent misrepresentation implicates only the duty of *care* in supplying commercial information; honesty or good faith is no defense, as it is to a claim for fraudulent misrepresentation.  Repudiating the independent injury requirement for negligent misrepresentation claims would potentially convert every contract interpretation dispute into a negligent misrepresentation claim."  *Id.* (emphasis in original).  Even when a party pleads negligent misrepresentation as an alternative theory of recovery to breach of contract, the plaintiff must still allege an independent injury.  *See Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 466–67 (Tex. App.—Dallas 2006, pet. denied).

Technomedia alleges that Defendants breached the contract when they "unilaterally terminated the project" after Technomedia substantially performed the work of SOW#4.  (Doc. 22 at ¶ 19.)  "Defendants' breach of the MEPSA, SOW#4 and the Confidentiality Agreement caused damage to [Technomedia]."  (*Id.*)  Technomedia further alleges that "Defendants made representations . . . regarding [their] intent to enter into revenue sharing and maintenance agreements with [Technomedia] and to complete and memorialize SOW#4."  (Doc. 22 at ¶ 24.)  Defendants respond that Technomedia fails to allege an injury separate from breach of contract and that the alleged misrepresentation involved promises of future conduct rather than intentional misstatement of existing fact.  (Doc. 27 at ¶¶ 21–22.)

Technomedia's claim for negligent misrepresentation must be dismissed because it fails

to plead an injury independent of its claim for breach of the MEPSA contract or the SOWs.

B. Unjust Enrichment

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Unjust enrichment is "the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay." *Friberg-Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 832 (Tex. App.—Fort Worth 2006, pet. filed) (quoting *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.)), *rev'd on other grounds*, 240 S.W.3d 869 (Tex. 2007); *Mowbray v. Avery,* 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied).

Unjust enrichment applies to disputes where there is no actual contract, based on the "equitable principle that one who receives benefits that would be unjust for him to retain ought to make restitution." *Friberg-Cooper*, 197 S.W.3d at 832; *Mowbray*, 76 S.W.3d at 679. Unjust enrichment is not a proper remedy "merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Heldenfels Bros*, 832 S.W.2d at 42 (quoting *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App.—Austin 1987, writ denied)); *Mowbray*, 76 S.W.3d at 679.

Generally, when a "valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory[.]" *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Nevertheless, there are instances when recovery is allowed despite an express contract. *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988).

Recovery in *quantum meruit* may be allowed "when a plaintiff has partially performed an express contract but, because of the *defendant's* breach, the plaintiff is prevented from completing the contract." *Id.* (emphasis in original).  Although theories of recovery for breach of an express contract and *quantum meruit* are mutually exclusive, a plaintiff may plead both but only recover on one.  *Allison v. Douglas*, 531 S.W.2d 445 (Tex. Civ. App.—Waco 1975); Fed. R. Civ. P. 8(a)(3); Tex. R. Civ. P. 47, 48; *see also University State Bank v. Gifford-Hill Concrete Corp.*, 431 S.W.2d 561, 574 (Tex. Civ. App.—Fort Worth 1968, ref. n.r.e) ("Although the two theories of recovery are inconsistent, they may be pled alternatively under the provisions of Rules 47 and 48, Texas Rules of Civil Procedure").

Defendants contend that the MEPSA is the "only enforceable contract" between the parties, and therefore the unjust enrichment claim should be dismissed.  (Doc. 27 at ¶ 25.) Technomedia responds "that the MEPSA does *not* encompass the totality of the parties' relationship, contractual or otherwise" and pleads alternative theories of recovery, including fraud.  (Doc. 36 at ¶ 21.)  The MEPSA contract, with its merger clause, was the last signed written agreement between the parties.  Because the Court finds, as a matter of law, that the MEPSA encompasses the full contractual relationship between the parties, Technomedia's unjust enrichment claim must be dismissed.

### C. Fraud

In Texas, a claim for fraud must allege "(1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; (6) that he thereby suffered injury."  *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1287 (5th Cir.

1991); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977).

Defendants argue that Technomedia's complaint does not adequately describe (1) which statements were allegedly fraudulent; (2) who made them; (3) where and when they were made; and (4) how the statements were fraudulent. (Doc. 27 at ¶¶ 28–32.) Technomedia responds that "Defendants told [Technomedia] that they could not afford to pay [Technomedia] in the customary fashion of two to three large payments and would be willing to share in revenues, such as those generated from SOW#2 and SOW#3 from companies like Halliburton, Schlumberger and Saudi Aramco as well as those generated by the multiple projects Defendants allegedly intended to engage [Technomedia] to perform if the large payments could be avoided." (Doc. 22 at ¶ 22.) "These statements were made in 2007 by Edwin Geissler, President of WCS, among others." (*Id.*) Technomedia further alleges that Defendants "made misrepresentations to [Technomedia], including but not limited to, Defendants' intent to enter into revenue sharing and maintenance agreements with [Technomedia] and to complete and memorialize SOW#4." (*Id.*)

Technomedia responds that it satisfies the requirements of Rule 9(b), which specifically permits pleading intent and knowledge generally. (Doc. 36 at ¶ 28.) Technomedia pleads that (1) the statements were false when made; (2) the Defendants "knew the representations were false when made;" and (3) "they were made with the intent to induce [Technomedia] to rely on the representations so that [Technomedia] 'would be willing to work for [Defendants] without receiving proper and customary payment.'" (Doc. 36 at ¶ 28 (quoting Doc. 22 at ¶ 22).) This argument amounts to no more than a recitation of the elements of fraud. Technomedia does not explain why it believes the statements were false when made or how Defendants knew that they were false at the time. Technomedia's fraud claim must be dismissed.

D. <u>Misappropriation of Trade Secrets</u>

The elements of a misappropriation of trade secrets claim in Texas are that (1) the plaintiff owned a trade secret; (2) the defendant used or disclosed the trade secret in violation of a confidential or contractual relationship with the plaintiff, after acquiring the trade secret by improper means, or after acquiring the trade secret with notice that disclosure was improper; and (3) the plaintiff suffered injury. *K & G Oil Tools & Serv. v. G & G Fishing Tool Serv.*, 314 S.W.2d 782, 787–88 (Tex. 1958); *Trilogy Software Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied). A trade secret includes "any formula, pattern, device, or compilation of information which is used in one's business, and which gives [] an opportunity to obtain an advantage over competitors who do not know or use it." *Hyde Corp. v. Huffines*, 314 S.W2d 763, 766 (Tex. 1958); *see Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003).

Defendants contend that Technomedia fails to identify the allegedly misappropriated trade secrets, show how Defendants disclosed those trade secrets, or state how Technomedia was injured. (Doc. 27 at ¶ 36.) Plaintiff's complaint satisfies the first element of a misappropriation of trade secrets claim, existence of a trade secret, by alleging that Technomedia used "proprietary" information to perform the work called for under the various SOWs. (Doc. 22 at ¶ 14.) Technomedia states that the trade secrets in question include an "optional proprietary multi-language graphical user interface called the XMp that 'wraps around' the CBTs and a proprietary integrated learning solution ("ILS") that deploys the CBTs and XMp into an on-line training application for the training and management of oil and gas industry employees" and that it "developed and created both the ILS and XMp." (Doc. 22 at ¶ 6.)

The second element requires Technomedia to show that Defendants acquired the trade secret through a breach of a confidential relationship or discovered the secret by improper

means. Technomedia alleges that Defendants reproduced the ILS and XMp material at least nine times without sharing revenue as required under the SOWs. (*Id.* at ¶ 13.) The parties disagree over who owns the ILS, XMp, and "some, if not all, of the proprietary media components [Technomedia] provided Defendants through its work on the SOWs." (*Id.* at ¶ 14.) Technomedia alleges that by keeping the material, which includes trade secrets, Defendants are in violation of the SOWs and MEPSA contract. (*Id.*) Technomedia correctly points out that Defendants understood the information to be "confidential and proprietary" and "trade secrets by [Technomedia]" under the confidentiality agreement signed by the parties on February 7, 2007. (*Id.* at ¶ 7.)

The last element of a misappropriation of trade secrets claim requires a plaintiff to show that use of a misappropriated secret caused harm. *See Trilogy Software*, 143 S.W.3d at 463. "A cause of action for misappropriation of trade secrets accrues when the trade secret is actually used." *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (citing *Hyde*, 314 S.W.2d at 769). Use is "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir. 2007) (citing Restatement (Third) of Unfair Competition § 40 (1995) ("Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret all constitute 'use.'" (internal citations omitted)).

Technomedia alleges that Defendants used proprietary information to generate revenue that they refused to share according to the terms of the MEPSA and SOWs. (Doc. 22 at ¶ 13.) "To date, [Technomedia] has recorded nine activations by WCS, but WCS has failed and refused

to revenue share on the income received from these CD activations, which [Technomedia] is entitled to for each student who took the class." (*Id.*; *see also* Formula for "Revenue Sharing" Obligations, Doc. 27-1 at 8.)  Technomedia pleads its misappropriation of trade secrets claim with sufficient particularity.

IV. Conclusion

Accordingly, the Court hereby ORDERS that Defendants' motion to dismiss (Doc. 26) is GRANTED IN PART and DENIED IN PART. Plaintiff's claims for negligent misrepresentation, unjust enrichment, and fraud are DISMISSED.

SIGNED at Houston, Texas, this 9th day of September, 2010.

                                                     _____
                                                     MELINDA HARMON
                                                     UNITED STATES DISTRICT JUDGE